# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.H. II**

**No. 21-0903** (Raleigh County 21-JA-67)

## MEMORANDUM DECISION

Petitioner Father M.H., by counsel Stephen P. New, appeals the Circuit Court of Raleigh County's October 8, 2021, order terminating his parental rights to M.H. II.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Latachia Miller, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2021, the DHHR filed a child abuse and neglect petition against petitioner alleging substance abuse and failure to protect the child. The DHHR alleged that it responded to an emergency call regarding an unresponsive child, then two-year-old M.H. II, who had been transported to Beckley Appalachian Regional Hospital. The DHHR alleged that Child Protective Services ("CPS") workers spoke to a registered nurse at the hospital who stated that when the child arrived at the hospital, "his lips were blue, and he was not breathing." According to the petition, the nurse performed cardiopulmonary recitation on the child, intubated the child, and administered 0.4 mg of Narcan but the child did not respond to the initial dosage of medication. Thereafter, the nurse administered another 0.4 mg of Narcan and the child responded and opened his eyes. The nurse stated that she administered a third dosage of Narcan and the child began to vomit. While

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

the child was intubated, the nurse stated that petitioner denied substance abuse but appeared to be falling asleep while standing in the hospital room. The DHHR alleged that petitioner refused to let the child be transported, via life flight, to Charleston Area Medical Center. As a result, the local hospital staff authorized and signed for the transfer due to the nature of the incident.

The DHHR further alleged that a Beckley City Police Department officer arrived at the hospital and observed petitioner in the emergency room as "nodding off while standing," and described petitioner as having "slurred speech, droopy eye lids and could not keep his balance." According to the petition, petitioner again denied substance abuse, and he denied the possibility that the child had been exposed to drugs. However, the officer spoke with hospital staff who advised him that the positive effect of Narcan could only happen if it interacted with opioids in the child's system. The DHHR alleged that another law enforcement officer responded to petitioner's home, interacted with petitioner's girlfriend at the residence, and obtained a search warrant for the residence. Inside the residence, officers located several items of drug paraphernalia, including heroin, needles, and spoons with burnt residue, as well as a firearm.

A CPS worker interviewed petitioner on the day of the incident and observed petitioner having slurred speech and dilated pupils. The worker observed petitioner nodding off during the interview, but petitioner stated that he woke up to the child "making noises that sounded like hiccups." Petitioner also claimed that he contacted 9-1-1 but stated he was unsure of what time he placed the call or what time he found the child struggling to breathe. Petitioner maintained that he had no idea why the child stopped breathing and denied any current substance abuse. However, the CPS worker observed fresh track marks on petitioner's top left hand and dried blood next to the marks. Petitioner disclosed a long-standing history of prior substance abuse and stated there may have been drugs in the home because his girlfriend used heroin. Next, the CPS worker interviewed the girlfriend, who stated that she and petitioner used heroin every day. The girlfriend stated that she kept her heroin on her person but admitted that it was possible that the child "got into [petitioner]'s heroin that he kept downstairs." According to the petition, petitioner and the girlfriend were both charged with child neglect resulting in injury, and petitioner was also charged as a prohibited person with a firearm. Finally, the DHHR alleged that petitioner had voluntarily relinquished his parental rights to an older child in a prior proceeding in 2015.

In June of 2021, the circuit court held an adjudicatory hearing during which petitioner did not appear but was represented by counsel. The DHHR proffered that previously disclosed medical providers and law enforcement officials were present to attest that M.H. II was in petitioner's care, custody, and control when the then two-year-old child overdosed on drugs; that medical providers determined that the child was exposed to fentanyl; and providers administered Narcan to revive the child. Further, and since the filing of the petition, petitioner also overdosed on drugs, necessitating the administration of Narcan. After the proffer of evidence, the circuit court found that petitioner was an abusing parent.

The circuit court held a hearing in August of 2021 during which petitioner moved for a post-adjudicatory improvement period. The court considered the motion and noted that the matter had been scheduled for a dispositional hearing and that petitioner had not appeared at prior hearings before the court. As such, the court determined that petitioner's motion should be held in abeyance for thirty days "in order that [petitioner] demonstrate to the [circuit court] a willingness

to comply with services offered to him." The court further directed petitioner to participate in drug screening and additional services deemed appropriate by the Raleigh County Day Report Center. The DHHR advised the court that should it consider granting petitioner's motion for an improvement period, it recommended he participate in inpatient substance abuse treatment. Accordingly, the circuit court instructed petitioner to begin contacting inpatient drug treatment facilities. The guardian objected to petitioner's motion based on the severity of the abuse and neglect allegations.

The circuit court held a final dispositional hearing in October of 2021 during which petitioner did not appear but was represented by counsel. The circuit court noted that petitioner was aware of the dispositional hearing and "was present for a criminal proceeding before the [c]ourt" just two days prior. Petitioner's counsel represented that he attempted to contact petitioner at two drug treatment facilities. However, petitioner was not participating in treatment at either facility. At the hearing, the DHHR proffered evidence that petitioner abused controlled substances, including cocaine and fentanyl, failed to attend at least seven drug screens at the Raleigh County Day Report Center while testing positive for cocaine and fentanyl on other screens, and failed to participate in drug treatment programs. The DHHR further demonstrated that petitioner overdosed on controlled substances while in another family's home, resulting in a separate abuse and neglect case being opened involving that family.

At the conclusion of the dispositional hearing, the circuit court denied petitioner's motion for an improvement period, finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's welfare. The court terminated petitioner's parental rights by order entered on October 8, 2021. It is from this dispositional order that he now appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The mother voluntarily relinquished her parental rights to the child. As such, the permanency plan is for the child to be adopted by his current foster family.

Petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period because he acknowledged the issues of abuse and took steps to remedy them. Petitioner argues that he sought drug treatment through a rehabilitation program and received a certification of completion subsequent to the dispositional hearing. According to petitioner, he showed improvement in these proceedings and was promised by the circuit court that if he showed compliance with services during the thirty days the court held his motion for an improvement period in abeyance then he would be entitled to an improvement period. As such, petitioner asserts that he showed sufficient improvement to warrant the granting of an improvement period. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner avers that he made some improvements, the record shows that petitioner failed to demonstrate that he was entitled to an improvement period. Specifically, petitioner failed to fully avail himself of the resources offered to him and failed to appear for multiple hearings during the proceedings. Further, petitioner continued to test positive for multiple controlled substances, including heroin and fentanyl, while missing several scheduled drug screens. While petitioner refers to an exchange between the circuit court and petitioner during an August of 2021 hearing in support of his argument that he was entitled to an improvement period, he is incorrect that the court ever promised or guaranteed him a post-adjudicatory improvement period. Indeed, as noted above, the circuit court has discretion to deny an improvement period when it finds that no improvement is likely. *Id.*

Here, despite the court holding petitioner's motion for an improvement period in abeyance, it found that petitioner missed seven unexcused drug screens from the time of the August hearing until the final dispositional hearing in October of 2021. Even if petitioner is correct that the court "agreed" to grant him an improvement period subject to his compliance with services, he acknowledges that one of the court's requirements to be granted an improvement period was participating in drug screens. Although petitioner completed three drug screens over the final month of the proceedings, he missed seven other screens altogether. He also failed to enroll in inpatient drug treatment by the time of the dispositional hearing. As such, by continuing to abuse drugs, petitioner failed to make any substantial changes to his circumstances despite the DHHR's prior interventions and services. Therefore, it is clear that petitioner was unlikely to fully participate in an improvement period, and we therefore find no error in the circuit court's decision.

Moreover, based on the evidence of petitioner's sporadic compliance and his failure to abide by the circuit court's orders, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is

no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). On appeal, petitioner asserts that the circuit court's decision to terminate his parental rights was improper when he was making substantial progress toward reunification. However, the court's findings are based on substantial evidence that petitioner was never fully compliant with his services and that he failed to cease abusing drugs, endangering his ability to properly parent the child, who suffered a drug overdose in his care. Moreover, the circuit court found that termination of petitioner's parental rights was in the child's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment